UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LJS RESTAURANTS, INC., et al.                                                           PLAINTIFFS

v.                                                             CIVIL ACTION NO. 3:11CV-234-S

PAUL R. LANCE, et al.                                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of cross motions for preliminary injunctive relief. (Dns 20, 23).[1] Long John Silvers, Inc. and A & W Restaurants, Inc. (collectively herein ("LJS") seek to terminate their franchise relationship with long-time franchisees Paul and Cynthia Lance and their company, All American Restaurants, Inc. (collectively herein "Lance").

Lance operated a number of A & W restaurants in Florida and one in Kentucky under franchise agreements with LJS. As is customary under such agreements, Lance was required to pay rent, royalty fees, advertising fees, and other costs as required by the agreements. Various disputes between the parties came to a head in 2009 and Lance failed to pay royalty and advertising fees for certain of the locations. Some of the franchise agreements were terminated and a number of restaurants closed. Only three of the franchises were in issue at the commencement of the litigation, and only two remain at issue at this time.[2]

---

[1] There are a number of other motions (Dns 43, 49) which will be addressed in due course.

[2] Issues with the Kentucky restaurant have apparently been resolved and injunctive relief is no longer necessary with respect to this franchise.

In issue is the continued operation of two Orlando restaurants referred to as Unit #94868 and Unit #0000030 (hereinafter the "Orlando Units").  LJS seeks an order enjoining Lance from continuing to operate the Orlando Units on the ground that the franchise agreements relating to these units have expired and that Lance has been terminated as an A & W franchisee.  Lance claims that, by the terms of an agreement reached with LJS on March 18, 2011, he has renewed franchise rights for these properties.  He filed a motion for a temporary restraining order to prevent LJS from discontinuing its supply of products from A & W distributors needed to continue properly operating the Orlando Units.  The parties were able to reach an agreement which has continued the product stream to these restaurants pending a decision by the court on LJS's motion for an injunction.  Lance's motion for a temporary restraining order (DN 23) is thus moot.

Lance contends that his franchise rights for the Orlando Units were reinstated by the March 18, 2011 *Agreement Relating to Outstanding Account Balances of Paul R. Lance and Cynthia G. Lance* ("the Agreement")  executed by the parties.  The Agreement states at paragraph 7 that

> Upon acknowledgement [sic] of this Agreement and upon final filing of the 2011 A & W Franchise Disclosure Document, A & W Restaurants will reinstate Franchisees and will issue Franchise Agreements for A & W unit #94868 and AW [sic] unit #0000030.  All terms and conditions of the Franchise Agreements must be strictly adhered to in order for Franchisees to remain in good standing.  Failure to do so will result in any and all remedies available under the Franchise Agreements.

There is no question as to acknowledgment of the agreement.  It was executed by the parties on March 18, 2011.  Thus, under a plain reading of this term, Lance was entitled to reinstatement as franchisee of the Orlando Units on March 18, 2011 or as soon thereafter as the 2011 A & W Franchise Disclosure Document was finally filed.

However, LJS urges the court to read and consider the document as a whole.  LJS contends that Lance has breached the Agreement, and therefore, in LJS' view, it is no longer obligated to

reinstate Lance or issue new franchise agreements for the Orlando Units. For a number of reasons, the court finds that LJS' analysis is flawed.

First, reading the entire agreement as a whole (see generally, *United States v. Hardy*, 916 F.Supp. 1373, 1380 (W.D.Ky. 1995)), the only conditions upon which reinstatement and issuance of new agreements was based were (1) acknowledgment of the Agreement, and (2) final filing of the designated disclosure document.

Second, the paragraph concerning breach of the Agreement, paragraph 10, provides that "in the event of breach by either party, each shall be entitled to bring an action for specific performance or damages and reasonable attorney's fees and costs." Thus, by its express terms, LJS' remedies for Lance's alleged breach did not include a refusal to comply with its own obligations under the agreement. Repudiation was not provided for under the Agreement. Rather, the parties limited their remedies to the filing of an action for specific performance, damages, attorney's fees and costs.

Third, the court finds that the acts of Lance upon which LJS has premised its claim of breach did not violate any of the Agreement's terms. Therefore, even if repudiation of the Agreement was an option, we do not find that a breach occurred.[3]

The Agreement begins with the parties' acknowledgment that

(1) Lance owed LJS certain royalty and advertising fees which the parties sought to resolve by the Agreement, and

(2) LJS agreed to afford certain credits to Lance (or another appropriate party) relating to the Agreement and other matters set out in the Agreement.

---

[3]We note at this point that LJS has argued that there have been some complaints about the operation of the Orlando restaurants which would, *arguendo*, constitute violations of the franchise agreements. This argument has no place in the discussion of breach of the Agreement. If there are no reinstated franchises for the Orlando Units, they cannot be breached. If there are new franchise agreements in play, paragraph 7 of the Agreement provides that failure to adhere to their provisions will result in all remedies available *under the Franchise Agreements*. Therefore, LJS has no traction with this argument on its motion for injunctive relief. It would need to take steps to terminate any existing franchises in accordance with the Franchise Agreements.

Specifically, Lance acknowledged that he owed the amounts specified by LJS for certain properties, with the exception of two units: Unit #90076 (Clermont, Florida) and Unit #31004 (Kissimmee, Florida). Nowhere in the Agreement did Lance acknowledge that he owed anything for these two units. In fact, the dispute over these two units was repeatedly referenced in the Agreement as "outstanding and disputed matters" or "outstanding and disputed balances." Further, the dispute was addressed separately in paragraph 6 of the Agreement.

Paragraph 2 of the Agreement established that the total undisputed amount owed by Lance (that is, for all units except #31004 and #90076) was $179,863.86. Paragraph 3 then provided that the return of various equipment yielded $43,850.69 to be credited toward the undisputed total owed. Paragraph 4 provided that a $175,000 credit resulting from a third-party purchase of the Eustis, Florida unit would also be applied to the undisputed outstanding balance. The net result of the application of the credits was a $38,986.83 overpayment on the undisputed outstanding balance owed by Lance.

In paragraph 6, the parties agreed that LJS would hold the $38,986.83 in escrow "until the resolution of the remaining outstanding and disputed matters as they relate to AW [sic] unit #31004 (Kissimmee, Florida) and AW [sic] unit #90076 (Clermont, Florida as outlined on Exhibit B. Franchisee must submit proposed [sic] plan regarding the remaining outstanding and disputed balances to LJS and A & W as it relates to these locations no later than April 15, 2011."

On April 15, 2011 at 9:45 p.m., Lance sent LJS an e-mail which stated that "I really don't think I owe A & W anything in connection with the drive-ins [#31004 and #90076]..." LJS contends that Lance's response was neither the required "proposed plan" nor a timely response.

With respect to the question of timeliness, LJS urges that the e-mail was sent after business hours in a hasty effort to pay lip service to the requirement that Lance submit a proposed plan no later than April 15, 2011. However, nothing in the terms of the Agreement prohibited an e-mail response after normal business hours on April 15, 2011. There was no requirement in the Agreement that Lance's "proposed plan" take any particular form nor that it arrive during certain hours.

We find that Lance's response constituted a "proposed plan" in satisfaction of paragraph 6 of the Agreement. LJS contends that (1) Lance acknowledged owing $351,885.46 for Units #31004 and #90076 and that (2) Lance agreed to submit a plan of payment of this amount by April 15, 2011. LJS Rely, pp. 2-3. But the Agreement simply does not bear out either of these contentions.

LJS seeks to add a "payment" feature to the term "proposed plan" in paragraph 6 of the Agreement. The Agreement did not, however, require that Lance submit a plan *of payment* of the disputed amounts. As already indicated, Lance did not agree that he owed anything for these two units. The Agreement expressly excluded the units from the undisputed amounts and acknowledged them as "outstanding and disputed." Paragraph 6 required Lance to submit a "proposed plan regarding the remaining outstanding and disputed balances," and nothing more.

On April 15, 2011, Lance submitted a statement that "I really don't think I owe A & W anything in connection with the drive-ins..." This complied with the requirement that Lance "submit a proposed plan regarding the outstanding and disputed balances," in that his plan was to continue to contest that he owed anything to LJS.

LJS finds this to be disingenuous, as it contends that Lance does not dispute that he failed to pay certain lease payments for the two units in question, but that he seeks a set-off for what he contends are failures on the part of LJS or others that precipitated his default.  LJS thus contends that Lance has acknowledged the amounts owed and committed to formulating a payment plan under the Agreement.

The problem is that the terms of the Agreement do not reflect such an understanding.  The Agreement resolved a number of issues between the parties.  The Agreement makes clear, however, that there were unresolved issues concerning Units #31004 and #90076.  Lance did not agree that any amounts were due for these units and therefore did not agree to make pay LJS.  The reasons for his position is immaterial.  If LJS was, *arguendo,* able to obtain an agreement from Lance to submit a payment plan for the payment of $351,885.46, that term was clearly not memorialized in this Agreement.

There is nothing ambiguous in the terms of the Agreement.  The terms must be given their plain and ordinary meaning.  *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974).  "Where the instrument is so clear and free of ambiguity as to be self-interpretive, it needs no construction and will be performed or enforced in accordance with its express terms."  *Fidelity Construction Company, Inc. v. T.A.Blair, Inc.*, 2004 WL 1699770 (Ky.App. July 30, 2004), *citing Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99 (Ky. 2003).

The court need not abandon all common sense in determining whether Lance proposed a plan relating to the outstanding and disputed balances.  As the plan was to relate to outstanding and *disputed* balances, it is conceivable that Lance would submit an "owe nothing" plan.[4]  Whether a

---

[4] This was apparently envisioned by LJS also, as an e-mail sent to Lance stated that "If Bobby [Lance] disputes any amounts

(continued...)

plan of payment or a plan to pay nothing, each such response proposes a plan, as required by the Agreement. No particular form of response was required, only that a proposed plan be submitted. Lance did so by stating the he did not think he owed anything with respect to the two units.

The construction and interpretation of a contract, including questions regarding ambiguity, are issue of law. *Southern Comfort Waterbeds & Spas, Inc. v. Master Spas, Inc.*, 2004 WL 2595952 (W.D.Ky. Aug. 9, 2004). The court finds that LJS has not shown that Lance breached the March 18, 2011 Agreement. Therefore, we conclude that LJS is unlikely to succeed on the merits of its claim that Lance's continued operation of the Orlando Units constitutes an unauthorized use of the A & W marks in violation of the Lanham Act. We need not address the remaining factors under *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.,* 670 F.2d 642, 651 (6th Cir. 1982) concerning LJS' motion for a preliminary injunction.

Motions having been made and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiffs, LJS Restaurants, Inc., *et al.*, for a preliminary injunction (DN 20) is **DENIED** and the motion of the defendants, Paul R. Lance, *et al*, for a temporary restraining order (DN 23) is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

September 1, 2011

**Charles R. Simpson III, Judge**
**United States District Court**

---

[4](...continued)
owed then his plan can be zero but we need something from Bobby by a date certain in order to move these matters forward to some type of resolution." Tussey e-mail, March 18, 2011. We note this document not, as asserted by Lance, to indicate that a "zero" response was elicited by LJS, but rather only to illustrate that a common sense reading of paragraph 6 includes an "owe nothing" plan where the amount claimed is clearly disputed.